IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Lisa Henson, | ) |
| Plaintiff, | ) |
| v. | ) No. 12 C 3785 |
| Canon Business Solutions, Inc., | ) Judge Virginia M. Kendall |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lisa Henson filed a pro se complaint against Defendant Canon Business Solutions, Inc., (now known as Canon Solutions America, Inc.), her former employer, alleging violations of Title VII of the Civil Rights Act of 1964. (Dkt. No. 1). Specifically, Henson alleged that Canon retaliated against her for filing a complaint with the EEOC and discriminated against her based on her race. Canon moved for summary judgment (Dkt. No. 35), at which point the Court appointed counsel for Henson. (Dkt. No. 45). The Court granted Henson's motion to reopen discovery in order to respond adequately to the summary judgment motion. (Dkt. No. 60). Canon renewed its motion for summary judgment (Dkt. No. 89), and Henson cross-moved for summary judgment. (Dkt. No. 103).

For the reasons stated below, the Court denies Defendant's motion for summary judgment, and denies Henson's cross-motion for summary judgment.

## STATEMENT OF FACTS

The facts in this section are undisputed, unless otherwise noted. Defendant Canon is a supplier of networked office systems, copiers, printers, and related services to business customers. (Def. 56.1 St. ¶ 1; Pl. 56.1 St. ¶ 3). Canon employs salespeople, termed Major

Accounts Executives ("MAEs"), to sell its products directly to its business customers. (Def. 56.1 St. ¶ 3; Pl. 56.1 St. ¶ 3). Beginning in mid-November, 2007, Canon employed Plaintiff Henson as an MAE in its Schaumburg, Illinois sales office. (Def. 56.1 St. ¶ 3; Pl. 56.1 St. ¶ 2). In her role as an MAE, Plaintiff received a base salary of $45,000 and earned commissions based on sales. (Def. 56.1 St. ¶ 4; Pl. 56.1 St. ¶ 7).

In early 2008, Canon offered Plaintiff the temporary position of New Business Executive ("NBE"). (Def. 56.1 St. ¶ 9-10; Pl. St. ¶9). The position was expected to last between twelve and eighteen months. (Def. 56.1 St. ¶ 10; Henson Dep. 44: 11-13). Henson now disputes that she understood the temporary nature of the NBE program until January, 2009. (Pl. Resp. 56.1 St. ¶ 10). Henson testified in her deposition, though, that her understanding as of February, 2008 was that Canon expected the NBE position to last between twelve and eighteen months. (Henson Dep. 44: 11-13). While Henson was frustrated that she had difficulty obtaining written confirmation of the position's details, there is no doubt that she understood the NBE role was temporary. (*Id.* 43-44). The purpose of the position was to generate new business for Canon with companies with which Canon did not historically have a business relationship. (Def. 56.1 St. ¶ 11; Pl. 56.1 St. ¶ 9). Because the position involved dealing with unestablished accounts, the position carried a higher base salary and did not allow for the possibility of commissions. (Def. 56.1 St. ¶ 12; Pl. Resp. 56.1 ¶ 12).

On April 21, 2009, while still an NBE, Plaintiff filed a complaint with the EEOC, that she had been placed on a performance improvement plan in retaliation for complaints to her supervisor about working conditions. (Def. 56.1 St. ¶ 21; Pl. 56.1 St. ¶ 17). The EEOC dismissed the complaint. The complaint followed a conversation between Plaintiff and her supervisor, Kevin Sander, about concerns regarding the quality of her work and her concerns about working

2

conditions at Canon. Canon took no formal disciplinary action following the meeting. (Def. 56.1 St. ¶ 20; Pl. 56.1 St. ¶ 16). There is some dispute as to whether Sander was aware of the EEOC charge. Canon maintains that Sander was not aware of the EEOC filing, relying on Human Resources representative Shannon Heidkamp's testimony that policy was not to disclose EEOC interactions to supervisors. (Def.'s Resp. 56.1 ¶ 18). Henson offers Sander's deposition testimony that he knew "something" involving Henson was going on because Human Resources had begun to inquire about their working relationship. (Pl. 56.1 St. ¶ 18).

On May 19, 2009, Canon informed Plaintiff in a meeting with Sander and Heidkamp that it was discontinuing the NBE program and that she would be returning to her previous role as an MAE. (Def. 56.1 St. ¶ 23-4; Pl. 56.1 St. ¶ 26). During the meeting, the three discussed the terms of Plaintiff's transition. While she would return to the lower MAE base salary, she was to receive a commission guarantee of $3,500 per month for her first three months in order to guarantee that her take-home pay would not decrease in the short term. (Def. 56.1 St. ¶¶ 26-7; Pl. Resp. 56.1 St. ¶¶ 26-7).

On her return to the MAE position, Henson became responsible for servicing a specific book of customer accounts. Sander was responsible for assigning accounts to Henson. (Def. 56.1 St. ¶¶ 34-6; Pl. 56.1 St. ¶ 27). Prior to her return, Sander gave Henson the opportunity to create a list of twenty accounts that she would most like to have. (Def. 56.1 St. ¶ 34; Pl. 56.1 St. ¶ 24). Sander assigned to Plaintiff sixteen of those twenty accounts. (Def. 56.1 St. ¶ 36; Pl. 56.1 St. ¶ 27). The parties disagree about the significance of the accounts not given to Henson. Henson claims that these four accounts were substantial, "run rate revenue" accounts with the potential to earn large commissions. (Pl. 56.1 St. ¶ 27). Canon maintains that the accounts were not assigned to Henson as part of the routine practice of providing new accounts to newly hired MAEs. (Def.

Resp. 56.1 ¶ 27). The parties agree that responsibility for any given account often rotated among MAEs. (Def. 56.1 St. ¶ 39; Pl. 56.1 St. ¶ 22).

Canon also required that Henson make regular activity reports, and be in the office during business hours at least three days per week. (Pl. 56 .1 St. ¶¶ 39, 44; Def. Resp. 56.1 ¶ 39). While these requirements were consistent with Canon policy, Canon did not enforce this policy uniformly across its team of MAEs. (Pl. 56.1 St. ¶ 39; Def. Resp. 56.1 ¶ 39). The parties disagree as to the motivation for the inconsistent application of the attendance policy. Henson alleges that she was held strictly to the policy in retaliation for her EEOC filing (Pl. 56.1 St. ¶¶ 40-42), while Canon claims that it was simply enforcing its policy and any deviation from that policy was the exception rather than the rule. (Def. Resp. 56.1 ¶ 39). As to activity reporting, Henson again alleges that she was held to a stricter reporting standard than other employees due to her EEOC filing. (Pl. 56.1 St. ¶ 44). Canon admits that MAEs did not report their activities uniformly, but deny that the EEOC filing had anything to do with the way it applied its policy. (Def. Resp. 56.1 ¶ 44).

Almost two months after Plaintiff returned to the MAE role, Canon Sales Director Scott MacDonald (Sander's supervisor), commented in reference to Plaintiff that he did not want a "Dennis Rodman" or a "Terrell Owens" on his team. (Pl. 56.1 St. ¶ 57).[1] The parties disagree about what MacDonald meant be these comparisons. Plaintiff suggests that the references were racially charged (both Rodman and Owens are well known African American athletes), while Canon argues that both Rodman and Owens are examples of "successful individuals who are not team players." (Def. Resp. ¶ 32). He further complained that of Plaintiff's use of "Ebonics", specifically using the word "axe" instead of "ask." (Pl. 56.1 St. ¶ 33). Canon terminated

---

[1] Defendant did not reference these statements in its own 56.1 Statement or summary judgment motion, but did not deny that they occurred in its response to Plaintiff's own motion for summary judgment.

MacDonald's employment on November 4, 2009 following complaints from another employee. (Pl. 56.1 St. ¶ 61; Dkt. # 119, Def.'s Resp. to Pl.'s MSJ at 20 n.4).

On August 17, 2009, Henson filed a second complaint with the EEOC, alleging discrimination based on her race and retaliation for engaging in protected activities. (Pl. 56.1 St. ¶ 55; Def. Resp. 56.1 ¶ 55).

Plaintiff resigned from Canon on July 26, 2010 (Def. 56.1 St. ¶ 44; Pl. 56.1 St. ¶ 65). Plaintiff did not receive a separation package. Other Canon employees who left the company did. (Pl. 56.1 St. ¶ 68; Def. Resp. 56.1 ¶ 68). The parties dispute whether Henson was similarly situated to the employees who received separation packages. After Henson had left Canon, she inquired into why she had not received a separation package. Jayne Arndt, a Canon employee in the Human Resources department informed Henson that she did not receive a severance package, while other employees, did because those employees "had not filed EEOC charges against Defendant." (Pl. 56.1 St. ¶ 69). [2]

## **LEGAL STANDARD**

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Thayer v. Chiczewski¸* 705 F.3d 237, 246 (7th Cir. 2012). In order to survive summary judgment, the nonmoving party must set forth facts that show there is a genuine issue of material fact for trial "such that a reasonable jury could return a verdict in [his or] her favor." *Cincinnati Life Ins. v. Beyrer*, 722 F.3d 939, 951 (7th Cir. 2013); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). For the purpose of summary judgment, the Court views all facts in the

---

[2] Defendant in its response to Plaintiff's 56.1 statement argues that Arndt's statement is inadmissible hearsay because the employee was a low-level, nonsupervisory employee not authorized to speak for the company, and her statements thus do not qualify as admissions of a party opponent under Fed. R. Evid. 801(d)(2). While this Court reviews only facts whose substance would be admissible at trial, the form produced at the summary judgment stage need not be admissible. *See Wragg v. Village of Thornton*, 604 F.3d 464, 466 (7th Cir. 2010).

light most favorable to the nonmoving party. *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013). "Evidence supporting or opposing summary judgment must be admissible if offered at trial, except that affidavits, depositions, and other written forms of testimony can substitute for live testimony." *Malin v. Hospira, Inc.*, No. 13-2433, 2014 WL 3896175 at*1 (7th Cir. Aug. 7, 2014). On cross-motions for summary judgment, each movant must satisfy Rule 56's requirements. *See Cont'l Cas. Co. v. Nw. Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005).

## **DISCUSSION**

Henson alleges that Canon did not assign her key accounts and disparately applied its attendance and reporting policies because of her race and in retaliation for filing a complaint with the EEOC. Title VII prohibits employers from discriminating on the basis of race, 42 U.S.C. § 2000e-2(a)(1), as well as retaliating against employees who engage in protected activities, such as reporting or opposing unlawful employer behavior. § 2000e-3(a).

### A. Retaliation

Henson proceeds under the "direct method" of proving retaliation, and thus must demonstrate that (1) she engaged in a statutorily protected activity; (2) that Canon took an adverse employment action against her; and (3) a causal connection between the two. *Coleman v. Donahoe*, 667 F.3d 835, 859 (7th Cir. 2012). The Court considers each of these elements separately.

#### 1. Henson engaged in a statutorily protected activity

The parties agree that Henson filed a complaint with the EEOC on April 29, 2009. (Def. 56.1 St. ¶ 21; Pl. 56.1 St. ¶ 17). That Henson was not successful in her complaint is immaterial. *See Mattson v. Caterpillar, Inc.*, 359 F.3d 885, 892 (7th Cir. 2004). "Protection is not lost simply because an employee is mistaken on the merits of his or her charge. Protection is also not lost if

an employee drafts a complaint as best he or she can but does not state an effective legal claim." *Id.* ("We emphasize that this decision sets a low bar for receiving Title VII protection."). Only a groundless claim resting on facts that no reasonable person possibly could have construed as a case of discrimination could not constitute a statutorily protected activity." *Firestine v. Parkview Health System, Inc.*, 388 F.3d 229, 234 (7th Cir. 2004). Indeed, "[f]iling a charge with the EEOC about the alleged discrimination is the most obvious form of statutorily protected activity." *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 740 (7th Cir. 2011). The statutory language is intentionally broad. Title VII makes it unlawful "to discriminate against any individual . . . because he has made a charge . . . under this subchapter." 42 U.S.C. § 2000e-3(a). The statute contains no language that requires the charge to be successful. Therefore, the Court finds that Henson's April 2009 EEOC filing constitutes a protected act.

The parties further agree that Henson filed a second EEOC charge in August 2009. (Pl. 56.1 St. ¶ 55; Def. Resp. ¶ 55). This filing, as well, constitutes a protected act, but only to the purported adverse employment actions that occurred after August 2009.

2. Genuine disputes of fact exist as to whether Henson suffered materially adverse employment actions

The second element that Henson must demonstrate is that she suffered an adverse employment action. Title VII protects employees against "retaliation that causes a harm or injury." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). "Adverse employment actions generally fall into three categories: (1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy or reduce future career prospects; and (3) unbearable changes in job conditions[.]" *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 980 (7th Cir. 2014) (internal citation omitted). The harm must be such that "a reasonable employee

7

would have found the action materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006) (internal quotation marks omitted). The standard is an objective one. *White*, 548 U.S. at 68-69.

Henson specifically alleges three adverse employment actions and her submissions to the Court suggest an additional one. First, Henson argues that the manner in which Sander assigned accounts to her upon her return to the MAE role intentionally deprived her of her best accounts in that those accounts were known to generate high commissions. Second, Henson maintains that she was required to adhere to a disparately applied attendance policy as a result of her EEOC filing. Finally, Henson argues that she was required to submit activity reports in a way other employees were not. (Pl.'s Mot., Dkt. No. 107 at 15-9). Noted in both Henson's statement of facts (Pl.'s 56.1 St. ¶ 69) and motion for summary judgment (Pl.'s Mot.; Dkt No. 107 at 23), but not described specifically as an adverse employment action, is the fact that Henson did not receive a separation package when she left the company, while other similarly situated did. The Court finds that a jury could reasonably conclude that each of the first three allegations of adverse employment action could constitute materially adverse employment actions, and thus, denies summary judgment.

A reasonable jury could conclude that the reassignment of four key accounts constitutes an adverse employment action. The $42,600, or 95%, increase in Henson's $45,000 MAE base salary "to make up for the loss of a commission component" when she transitioned to the NBE role is clear evidence that commissions on sales were a significant portion of the MAE compensation structure. (Def.'s 56.1 St. ¶ 12). *See Alexander*, 739 F.3d at 980 (an employer's manipulation of tips comprising 40% to 73% of total compensation constituted a significant

8

change in benefits sufficient for a finding of an adverse employment action). Thus, the composition of an MAE's accounts has the potential to affect seriously the MAE's salary. Defendant points out correctly, however, that Henson has not presented evidence sufficient for a finding as a matter of law that the four reassigned accounts represented a material adverse change. A jury is better suited to decide whether accounts in question represented a significant change to Henson's compensation at trial.

A genuine dispute of fact exists as to whether Canon's requirement that Henson be in the office during working hours constitutes an adverse employment action. Again, the change must be "materially adverse" to a reasonable employee. *White*, 548 U.S. at 68. The parties dispute and submit contradictory evidence as to whether the policy was specific to Plaintiff, or was uniformly applicable to all MAEs. A reasonable jury could conclude that these actions either were or were not materially adverse. The question is materiality, and neither party has submitted evidence sufficient to find as a matter of law that the application of the policy was material as a matter of law. Canon's citation to *Thomas v. Potter*, 202 Fed. Appx. 118 (7th Cir. 2007), is misplaced. Canon argues that its application of the attendance policy did not intentionally exploit a unique vulnerability in its schedule change, and therefore does not constitute an adverse employment action. *Thomas* notes that exploitation of a unique vulnerability is sufficient for a finding of material adversity, but not necessary to one. *See also Washington v. Ill. Dept. of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005) (exploitation of employees' known vulnerabilities could constitute adverse employment action even if change was seemingly innocuous). The relevant issue is whether the schedule change rises "to the level of harm sufficiently serious to dissuade a reasonable worker from making or supporting a charge of discrimination." *Thomas v.*

*Potter*, 202 Fed. Appx. 118, 119 (7th Cir. 2006) (quoting *Burlington Northern*, 126 S. Ct. at 2415) (internal quotation marks omitted).

The same materiality standard applies to the activity reporting requirement, but no genuine dispute of fact exists as to that policy. Henson alleges that she was required to submit increasingly frequent activity reports to her supervisors after her April EEOC filing. She also notes, however, that filing activity reports was "something she already was doing fairly regularly." (Pl. Mot. Dkt. No. 107 at 19). The only resulting harm that Henson points to is that she had to "expend more time and resources" on submitting the reports which took away from her ability to make sales. (*Id.* at 20). Henson's characterization of the reporting requirement does not rise to the level of materiality. "Petty slights [and] minor annoyances [. . .] are not normally sufficient to deter a reasonable person" and are therefore not material. *Lucero v. Nettle Creek Sch. Corp.*, 566 F.3d 720, 729 (7th Cir. 2009) (quoting *Burlington Northern*, 548 U.S. at 68) (internal quotation marks omitted). Thus, Henson's claim that the heightened reporting requirement constituted an adverse employment action cannot support a finding in her favor.

That Canon did not provide a monetary separation package for Henson could constitute an adverse employment action, but genuine issues of material fact surrounding the separation agreement exist. An improperly withheld monetary payment falls squarely into the most basic category of adverse employment actions described above. *See Alexander*, 739 F.3d at 980. Canon, however, maintains that Henson was simply not entitled to a separation package because she voluntarily left the company. No adverse employment action exists if Henson simply did not receive a payment to which she was not entitled.

3. Genuine disputes as to causation preclude summary judgment

A plaintiff must prove that but for the protected act, she would not have suffered the adverse employment action. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013); *see also Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 508 (7th Cir. 2014) ("Retaliation claims under Title VII require traditional but-for causation, not a lesser 'motivating factor' standard of causation.") (internal citation omitted). A plaintiff may present "smoking gun" direct evidence of causation which requires "something akin to an admission" of retaliation by an employer. *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643 (7th Cir. 2013). A plaintiff may also demonstrate the requisite causal link by constructing a "convincing mosaic" of circumstantial evidence, relying on "suspicious timing, ambiguous statements [. . .], and other bits and pieces from which an inference of retaliatory intent might be drawn." *Id*. (quoting *Coleman*, 667 F.3d at 860) (internal quotation marks omitted). A close temporal connection between the protected act and the adverse employment action, without more, is insufficient to support an inference of causation. *Turner v. The Saloon, Inc.*, 595 F.3d 679, 687 (7th Cir. 2010).

Henson offers two statements by Canon employees as direct evidence of the causal relationship between her EEOC filings and the purported adverse employment actions. First, Henson points to Sanders's statement during a meeting between Henson, Macdonald, Sander, and Heidkamp, from human resources. Heidkamp's notes from the meeting read "Kevin [Sander] – no one asked you to go to the EEOC." (Pl. 56.1 Tab 11). Heidkamp testified at her deposition that she no longer has any recollection of the meeting. Canon urges in its response that the meaning of the notation is unclear. The purpose of the meeting was to discuss Henson's complaints about working conditions at Canon. It would certainly be reasonable for a jury to infer that Sander was upset about Henson's EEOC charge, and was referring to it as the source of

11

Henson's troubles at work. On the other hand, Sander could simply be lamenting the fact that his working relationship with Henson was not more cordial. The quote provides no context, and because Heidkamp can no longer testify as to the rest of the meeting, a jury is best suited to determine its probative value. The statement alone is insufficient to support a finding of causation as a matter of law.

Second, Henson offers the statement of Jayme Arndt, another Canon Human Resources employee in support of the causation prong. Henson alleges that Arndt indicated that other Canon employees received separation packages, while Henson did not, because the other employees "didn't file a complaint with the EEOC." (Pl. 56.1 St. ¶ 59). In its response, Canon does not dispute that this statement occurred, but points to doubts as to its admissibility as a party admission, suggesting that Arndt was not authorized to make such a statement on behalf of Canon, seemingly a reference to Fed. R. Evid. 801(d)(2)(C). (Def. Resp. 56.1 ¶ 69). Canon's evidentiary argument likely fails. Statements of the employees of corporate defendants are admissible as admissions when made on a matter within the scope of the employee relationship. *See* Fed. R. Evid. 801(d)(2)(D). Compensation decisions are generally the responsibility of Human Resource employees. Nevertheless, the statement is not a "smoking gun" on which summary judgment can rest. A reasonable jury could conclude that Arndt's statement demonstrates that Henson did not receive a severance package due to unlawful retaliation. On the other hand, a reasonable jury could also find that the statement was speculative, that Arndt lacked personal knowledge of the reason for the lack of a severance package, or that the statement did not constitute the requisite causal link between the EEOC filing and the lack of a separation package for another reason. The Court cannot say that the statement, as a matter of law, satisfies the high standard of causation required in retaliation cases under Title VII.

Finally, under a "mosaic theory" of evidence of causation, the Court finds that a reasonable jury could conclude that these statements, taken together, provide sufficient evidence of causation, but that the evidence is not sufficient to support judgment as a matter of law. Neither Henson nor Canon, therefore, is entitled to summary judgment with respect to retaliation. A jury will need to decide whether Henson suffered an adverse employment action and whether her EEOC filings were the but-for cause of that adverse employment action.

### B. Discrimination

The posture of this case with respect to Henson's racial discrimination claim is fractured. Henson's complaint alleges discrimination based on race, but does not plead specific facts in support of that claim. Likely because of that lack of specific allegations, Canon's motion for summary judgment addressed only Henson's retaliation claim. Henson did address racial discrimination in her response to Canon's motion for summary judgment as well as in her own cross-motion for summary judgment. Canon addressed the merits of Henson's discrimination claim in its reply as well is in its response to her cross-motion for summary judgment. The Court recognizes that Henson was pro se when she filed her complaint. Leniency is appropriate with respect to the structure of Henson's complaint. *See Nichols v. Mich. City Plant Planning Dept.*, 755 F.3d 594, 600 (7th Cir. 2014) ("a trial court is obligated to give a liberal construction to a pro se plaintiff's filings"). However, the Court recruited counsel for Henson for the summary judgment briefing and experienced counsel did not seek leave to amend the complaint. In the same vein, it would be unfair to require Canon to have divined Henson's theory of the discrimination claim from the complaint as written and without further motion or clarification by her counsel. The Court will consider the merits of the parties' arguments for summary judgment on the discrimination claim, despite the fact that both parties have some responsibility for the

scattered way in which the evidence has been presented in that the complaint is somewhat sparse and Canon did not address discrimination in its opening memorandum.

A plaintiff may proceed under either the direct method, or indirect method to prove racial discrimination under Title VII. Under the direct method, a plaintiff must provide sufficient direct or circumstantial evidence of discriminatory intent that a rational jury could conclude the employer took an adverse employment action against the employee because of the plaintiff's membership in a protected class. *Collins v. Amer. Red Cross*, 715 F.3d 994, 999 (7th Cir. 2013). Under the indirect method, Henson must demonstrate "that (1) she is a member of a protected class; (2) she met her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorably." *Id*. (quoting *Naficy v. Ill. Dep't of Human Servs.*, 697 F.3d 504, 509 (7th Cir. 2012). If Henson successfully establishes these elements, the burden shifts to the Canon to produce "a legitimate, nondiscriminatory reason for the employment action." *Id*. at 1000. If Canon meets that burden, then Henson must demonstrate that the proffered reason was pretext. *Id*. The differences between the "direct" and "indirect" tests are narrowing. A "majority of active judges in [the Seventh Circuit] have opined that the time has come to jettison the 'ossified direct/indirect paradigm' in favor of a simple analysis of whether a reasonable jury could infer prohibited discrimination." *Perez v. Thorntons, Inc.*, 731 F.3d 699, 703 (7th Cir. 2013) (quoting *Coleman v. Donahoe,* 667 F.3d 835, 863 (7th Cir. 2012) (Wood, J. concurring)). "When all is said and done, the fundamental question at the summary judgment stage is whether a reasonable jury could find prohibited discrimination." *Garofalo v. Village of Hazel Crest*, 754 F.3d 428, 438 (7th Cir. 2014) (internal quotation marks omitted). Henson claims to proceed under both methods.

Neither party is entitled to summary judgment on the racial discrimination claim. Henson offers two statements by Canon supervisors that potentially implicate race. First, Henson cites MacDonald's statement that he did not want a "Dennis Rodman" or "Terrell Owens" on his team at Canon. (Pl. 56.1 St. ¶ 32). Second, Henson points to another statement by MacDonald that he disapproved of her use of "Ebonics" at work. (*Id.* ¶ 33). These statements are sufficient to defeat Canon's motion for summary judgment because they would allow a reasonable jury to infer a discriminatory motive. However, these isolated and ambiguous statements are not sufficient to support judgment as a matter of law in Henson's favor. Isolated remarks can raise an inference of discrimination under limited circumstances, *see Egonmowan v. Cook County Sherrif's Dept.*, 602 F.3d 845, 850 (7th Cir. 2010), but Henson must still demonstrate that she suffered an adverse employment action and that Canon's proffered reasons for that adverse employment actions were pretext. As described above, genuine disputes of fact preclude summary judgment as to whether Henson suffered an adverse employment action at all. Moreover, Henson herself points out that "it is far more likely" that MacDonald's negative attitude towards her was more likely a result of her EEOC filings than "the fact that she is a black female." (Dkt. #107 at 23). In short, Henson has not established facts sufficient to support a finding that she is entitled to judgment as a matter of law on her claim of racial discrimination. Thus, the Court denies both parties' motions for summary judgment with respect to discrimination.

## **CONCLUSION**

For the reasons stated herein, the Court denies Canon's motion for summary judgment, and denies Henson's cross-motion for summary judgment.

```
_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois
```

Date: September 24, 2014